**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Winton GARDINER, Defendant–**
**Appellant.**

No. 90–8418.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1992.

Barry S. Greff, P.A., Mark King Leban, Miami, Fla., for defendant-appellant.

William L. McKinnon, Jr., Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before COX, Circuit Judge, JOHNSON * and REAVLEY,** Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Defendant Winton Gardiner appeals various aspects of his conviction of and sentence for two narcotics offenses and failure to appear for trial. After due consideration of his arguments, we affirm Gardiner's convictions but vacate his sentence.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

On May 8, 1989, Atlanta Police Officer Vickye Prattes and Agent Paul Markonni of the Drug Enforcement Agency ("DEA")[1] became suspicious of Willis Dean, the defendant's cousin, when they noticed him deplaning a flight from Miami to Atlanta at Hartsfield International Airport.[2] While Officer Prattes and Agent Markonni were following Dean, Dean stopped and spoke with the defendant and then continued on his way. Officer Prattes and Agent Markonni thereafter initiated a conversation with Dean. When asked for his ticket, Dean gave the law enforcement officers two tickets, one in his name and the other bearing the name "Alvin Gardiner." Dean acknowledged that he and the owner of the second ticket were travelling together. A pat-down search, consented to by Dean, revealed a claim check that Dean asserted was for the defendant's luggage, not his own.

Soon thereafter, Agent Markonni found the defendant and started a conversation with him. The defendant stated that he was travelling alone and had checked no luggage. At this point, Dean approached Agent Markonni and the defendant. The defendant again asserted that he was travelling alone, notwithstanding the fact that Dean was holding his ticket. The defendant subsequently consented to a pat-down search by Agent Markonni which revealed nothing.

Because both suspects disavowed any interest in the bag represented by the claim check, Agent Markonni decided to obtain the bag. The claim check matched a Samsonite hard-sided bag with Dean's name on the identification tag and the name "Moselle Dean" etched into the bag itself. A Delta Airlines employee furnished a key to open the bag which contained three packages of 96% pure cocaine, totalling 2,999 grams.

The suspects were arrested, handcuffed with their hands behind their backs, and placed in the back seat of a police car. After delivering the suspects to the DEA office, Atlanta Police Officer Charles Frye found a Samsonite luggage key, which fit the lock on the bag used to transport cocaine, under the back seat on the left side where defendant Gardiner sat.

Further investigation revealed that the suspects' airline ticket reservations were booked for a party of two and the tickets were paid for at the same time, providing additional evidence that the suspects were travelling together. Moreover, the reservations called for both suspects to leave Miami at 10:50 a.m. (about three hours after reserving the tickets) and to return to Miami later that same day after spending

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Officer Prattes and Agent Markonni were members of the DEA Airport Task Force Detail at all times relevant to this case.

2. Dean was en route to Cleveland, Ohio, and had a layover in Atlanta.

only four hours, 20 minutes, at their destination. The only evidence indicating that the suspects were not travelling together was that only the departure leg of Dean's ticket had been purchased, whereas the defendant's ticket was paid for as a round trip.

## B. *Procedural History*

The suspects were initially charged in a two-count indictment.[3] The defendant twice failed to appear for trial. On October 18, 1989, the defendant was arrested in the Miami airport, having just arrived from the Bahamas. Trial was scheduled for Monday, January 8, 1990, and on Friday, January 5, 1990, the government filed a superseding indictment which added Count III, charging the defendant with knowingly failing to appear for trial on September 25, 1989, in violation of 18 U.S.C.A. § 3146 (West Supp.1991). On January 8, 1990, prior to the commencement of trial, the defendant made a motion to sever Count III which the trial court denied. After the government's case-in-chief, the defendant made a motion for acquittal and renewed his motion for severance. The court denied both motions. The defendant chose not to put on a defense but did request a jury instruction regarding an "uncontrollable circumstances" affirmative defense to the failure to appear count. The trial court denied the request for the jury charge. On January 10, 1990, the jury returned a guilty verdict. The defendant was sentenced on April 16, 1990. This timely appeal followed.

## II. ISSUES PRESENTED

The defendant asserts three principal grounds on appeal: (1) the evidence was insufficient to convict him on the conspiracy and possession counts, (2) the district court erred in denying his motions to sever the failure to appear count, and (3) the district court erred in its application of the Sentencing Guidelines.

---

**3.** Count I charged conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C.A. § 846 (West Supp.1991), and Count II

## III. ANALYSIS

### A. *Sufficiency of the Evidence*

■ Gardiner argues that the evidence was insufficient to convict him of the conspiracy and possession counts. This Court will reverse "[i]f there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt." *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir.1989). On appeal, "all reasonable inferences [are] made in the [g]overnment's favor." *Id.*

#### 1. *Possession*

■ The substantive possession count requires the government to prove (1) knowing possession and (2) intent to distribute. *United States v. Bain*, 736 F.2d 1480, 1486 (11th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984). "Possession may be actual or constructive." *Id.* Constructive possession may be established by proof of a " 'knowing power or right to exercise dominion and control over the substance.' " *United States v. Mieres–Borges*, 919 F.2d 652, 657 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 728 (1991) (quoting *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989)). However, the defendant's " 'mere presence in the area of contraband or awareness of its location is not sufficient to establish possession.' " *Id.* (quoting *United States v. Maspero*, 496 F.2d 1354, 1359 (5th Cir.1974)). Regarding the second element, intent to distribute may be inferred from the quantity of cocaine possessed by the defendant. *Poole*, 878 F.2d at 1392.

■ We find that the evidence regarding the Samsonite key, together with the overwhelming evidence that the defendant was travelling with Dean, who possessed the claim check for the Samsonite bag, justified a reasonable inference that the defendant had constructive possession of the cocaine. Officer Prattes testified that the defendant sat in the back seat of the

---

charged possession with intent to distribute in violation of 21 U.S.C.A. § 841 (1981).

squad car, on the left side, with his hands cuffed behind his back. Officer Frye testified that after the defendant exited the vehicle, he found the Samsonite key under the back seat on the left side. The defendant asserts that an inference of constructive possession is unreasonable because Agent Markonni performed pat-down searches on both Dean and the defendant, and the search of the defendant failed to reveal the Samsonite key, whereas the search of Dean uncovered a claim check. We disagree with the defendant's interpretation of the facts. We hold that the inference in question was reasonable on the basis of Agent Markonni's testimony that, at the time of the pat-down search of the defendant, he did not yet know that a key was needed and that he was searching for drugs rather than a key.

We also find that the jury could reasonably infer an intent to distribute from evidence indicating that the Samsonite bag contained 2,999 grams of cocaine[4] and that the defendant's travel arrangements were consistent with the behavior of traffickers in narcotics.[5] The evidence indicating the defendant's knowledge of his own guilt[6] lends further support to our finding regarding the defendant's intent to distribute.

We therefore find that the record contains evidence sufficient to convict the defendant of possession of cocaine with intent to distribute.

### 2. Conspiracy

■■■■■ To prove the conspiracy count the government must introduce evidence of (1) an agreement to possess with intent to distribute cocaine, (2) the defendant's knowledge of the essential objective of the agreement, and (3) the defendant's voluntary participation in the illegal venture. See *Mieres–Borges*, 919 F.2d at 657. In this case, we find that the evidence supporting the possession count made possible reasonable inferences regarding the second and third elements of the conspiracy count (the defendant's knowledge of the goal to possess and distribute cocaine and his voluntary participation in the scheme). *Cf. id.* at 657 ("evidence of possession would also serve as circumstantial evidence of a conspiratorial agreement to possess cocaine with intent to distribute"). We also find that the evidence relating to the possession count, together with the evidence indicating that the defendant and Dean were travelling together and that Dean possessed the claim check for the Samsonite bag, justified a reasonable inference of the first element (that the defendant agreed with Dean to possess cocaine with intent to distribute). *Cf. Bain*, 736 F.2d at 1484–86 ("close relationship" among co-defendants and co-defendants' awareness of presence of narcotics held to be sufficient evidence of conspiracy). Consequently, we hold that the evidence was sufficient to convict the defendant of conspiracy to possess with intent to distribute.

### B. Severance of Count III

■■■■■ The defendant claims that the district court's refusal to sever Count III violated Rule 14.[7] Specifically, the defendant argues that his desire to testify regarding Count III and to remain silent on Counts I and II justified severance. This Court reviews a lower court's refusal to sever counts under Rule 14 for an abuse of discretion and we will not reverse absent compelling prejudice. *United States v. LeQuire*, 943 F.2d 1554, 1563 (11th Cir.1991) (citations omitted). In determining wheth-

---

**4.** *See Poole*, 878 F.2d at 1391, 1392 (148.775 grams and sophisticated equipment sufficient to establish intent to distribute).

**5.** The reservations were made approximately three hours prior to departure time, the defendant and Dean were to remain at their northern destination less than five hours before returning to Miami, and the tickets were purchased in cash.

**6.** Gardiner apparently lied to the law enforcement officers (stating that he was travelling alone). In addition, he violated the terms of his release by travelling to the Bahamas and not returning in time for trial.

**7.** Fed.R.Crim.P. 14 provides in pertinent part that "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ..., the court may order ... separate trials of counts."

er severance of counts is proper, this Court should consider (1) whether Count III is " 'clearly distinct in time, place and evidence' " from Counts I and II, *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir.1984) (quoting *Cross v. United States*, 335 F.2d 987, 989 (D.C.Cir.1964)), (2) whether the defendant established that his proffered testimony regarding Count III was " 'important,' " *id.* at 648–49 (citations omitted), and (3) whether the defendant has a " 'strong need' " not to testify on Counts I and II, *id.* (citations omitted).

 We hold that the defendant has not demonstrated compelling prejudice because he had no important testimony to give on Count III. The defendant argues that his proffered testimony would have supported an affirmative defense under 18 U.S.C.A. § 3146(c) (West Supp.1991).[8] In his proffered testimony, he asserted the following: He was destitute and unable to earn any money in Miami while out on bond, he owed money to his retained attorney, and he thought that he would have to appear for his trial without legal representation if he failed to pay the money that he owed to his retained attorney. Gardiner thought his parents would pay his legal expenses. Consequently, he sent his sister's boyfriend to the Bahamas to obtain funds from his parents. The boyfriend, however, disappeared with the money his parents provided for his legal expenses. Believing that without his parents' assistance he would be unable to secure legal representation, the defendant himself journeyed to the Bahamas to ask his parents for money "because he was having problems with his credibility" and because he was unable to speak with his parents "directly." Once in the Bahamas, however, he was unable to generate enough funds to return to Miami to surrender despite his sincere intention to

do so. Finally, he voluntarily returned to Miami, in order to surrender, as soon as the bail bondsman gave him a prepaid ticket.

Gardiner argues that his alleged fear that he would not be represented because he could not pay his retained attorney would constitute an uncontrollable circumstance which "prevented" his appearance under section 3146(c). We disagree. Assuming without deciding that the defendant's alleged fear did constitute an uncontrollable circumstance, the defendant's proffer fails to show that the alleged fear prevented him from appearing. The word "prevent" mandates a causal link between the uncontrollable circumstance and the failure to appear. *See United States v. Chappell*, 854 F.2d 190, 196 (7th Cir.1988). We fail to discern such a causal link between the defendant's alleged fear and his failure to appear. Indeed, the defendant's proffer conclusively establishes this lack of causation; he alleged that he "surrendered" after the bail bondsman sent him a prepaid ticket to Miami, yet he does not allege that he had overcome his fear at that time or any other. If his alleged fear prevented his appearance in the first place, then he would not have surrendered until the fear had abated.[9] At most, his alleged fear prompted him to *consider* a journey to the Bahamas; however, it certainly did not cause him to remain in the Bahamas because, according to his proffer, he returned to Miami while still in the grip of the alleged fear.

The defendant's proffer failed to address an essential element of the section 3146(c) affirmative defense. Consequently, we find that the defendant had no important testimony regarding Count III, and therefore hold that the district court did not err in denying the defendant's motion to sever counts.[10]

---

**8.** Section 3146(c) provides that
It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, *and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender,* and that the person appeared or surrendered as soon as such circumstances ceased to exist.

18 U.S.C.A. § 3146(c) (West Supp.1991).

**9.** *Cf.* 18 U.S.C.A. § 3146(c) (West Supp.1991) (requiring that the defendant "surrendered as soon as such circumstances cease to exist.").

**10.** The defendant also argues that he was entitled to have his request for an instruction regarding the section 3146(c) affirmative defense granted because the trial evidence contained a

## C. *Sentencing Guidelines*

■ We review *de novo* the district court's interpretation of the Guidelines and application of the Guidelines to facts, but we review factual findings for clear error. *United States v. Burton*, 933 F.2d 916, 917 (11th Cir.1991). The defendant argues that the district court erred by (1) using the maximum sentence for the underlying offenses in calculating his offense level on the failure-to-appear count, and (2) increasing his offense levels on the narcotics counts by two levels for obstruction of justice.

### 1. *Enhancement for Maximum Sentence on Offenses Underlying Failure to Appear*

■ The defendant asserts that the district court should not have applied former section 2J1.6(b) to determine the base offense level for his sentence for Count III.[11] Specifically, the defendant contends that former section 2J1.6(b) as applied to him exceeded the statutory grant of authority because the sentences he actually received were well below the statutory maximum for the narcotics counts.[12]

The defendant mistakenly relies on *United States v. Lee*, 887 F.2d 888 (8th Cir. 1989), which held that former section 2J1.6(b) exceeded the statutory grant of authority when applied to a failure to report to serve a sentence, not a failure to appear for trial. *Id.* at 891–92. The *Lee* court itself noted a "significant difference in circumstances between failing to report for trial or sentencing, when a real possibility exists that the maximum sentence will be imposed, and failing to report for service after sentencing where the sentence to be served is but a fraction of the maximum." *Lee*, 887 F.2d at 892.[13] Finding *Lee* to be distinguishable from the instant case, we join the courts that have held that former section 2J1.6(b) operated within the statutory grant of authority as applied to failures to appear for hearings prior to trial and for trial. *See United States v. Williams*, 932 F.2d 1515, 1516–17 (D.C.Cir. 1991) (pre-trial hearing); *United States v. Agbai*, 930 F.2d 1447, 1448–50 (10th Cir. 1991) (trial); *United States v. Nelson*, 919 F.2d 1381, 1382–84 (9th Cir.1990) (pre-trial hearing).

Consequently, we hold that the Sentencing Commission did not violate its statutory

sufficient foundation for the allegations contained in his testimonial proffer. Because we held, *supra*, that the defendant's proffer would not constitute important testimony regarding the affirmative defense, we also find that the record evidence (which constitutes a mere subset of the allegations in the proffer) provides no foundation for that affirmative defense. Hence, the refusal to deliver the instructions failed to seriously impair the defense and, therefore, the district court did not err in denying the request. *See United States v. Lively*, 803 F.2d 1124, 1125–26 (11th Cir.1986).

**11.** Former section 2J1.6(a) provided a base offense level of six for failure to appear, and subsection (b) entitled "Specific Offense Characteristics" provided,

 (1) If the underlying offense is punish*able* by death or imprisonment for a term of fifteen years or more, increase by 9 levels.

 (2) If the underlying offense is punish*able* by a term of imprisonment of five or more years, but less than fifteen years, increase by 6 levels.

 (3) If the underlying offense is a felony punish*able* by a maximum term of less than five years, increase by 3 levels.

U.S.S.G. § 2J1.6(b) (1989) (emphasis added). The use of the word "punishable," rather than

"punished," mandates that the sentencing court must consider the statutory maximum sentence—not the actual sentence—for the underlying offense. Moreover, the commentary to former section 2J1.6 noted that "[t]he offense level for this offense increases in relation to the *statutory maximum* of the underlying offense." U.S.S.G. § 2J1.6, background cmt. (1989) (emphasis added). Based on the foregoing and the fact that the statutory maximum for each of the first two counts was twenty years, the district court enhanced the defendant's offense level by nine.

**12.** The lower court sentenced Gardiner to twelve years for each narcotics count, to run concurrently.

**13.** We emphasize that we state no opinion regarding the *Lee* court's actual holding "that the application of section 2J1.6 [to a failure to appear to serve a sentence] is not sufficiently reasonable and violates the statutory mandate given to the Sentencing Commission." 887 F.2d at 897. We do note, however, that at least one court has rejected the *Lee* holding. *United States v. Harper*, 932 F.2d 1073, 1075–77 (5th Cir.1991).

mandate by calculating the sentence for failure to appear for trial with reference to the maximum, rather than the actual, sentence for the underlying offenses. Therefore, the district court's application of former section 2J1.6(b) to the instant case was proper.

### 2. *Enhancement for Obstruction of Justice*

The defendant also claims that the district court erred by increasing his offense levels for the narcotics counts on the ground that he told the probation officer who prepared the Pre–Sentence Report that he knew nothing about the cocaine in the Samsonite bag and that he was with Dean only because Dean offered to buy him the plane ticket if he would drive a car back to Miami for Dean.[14] When the defendant was sentenced, in March 1990, section 3C1.1 provided "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (1989).

■■■ Although the text of section 3C1.1 has not been substantially altered since the defendant's sentencing, the comments have been significantly augmented. If these amendments merely clarify former section 3C1.1, then they must be considered; however, if the amendments would increase the defendant's punishment, then they should not be considered. *United States v. Howard*, 923 F.2d 1500, 1504 (11th Cir.1991). The commentary currently states that an enhancement is not warranted for "providing ... misleading information, not amounting to a *material* falsehood, in respect to a presentence investigation." U.S.S.G. § 3C1.1, appl. note 4(c) (1991) (emphasis added). Moreover, the commentary also provides that "material" connotes an assertion "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, appl. note 5 (1991). We hold that these amendments to the commentary serve merely to clarify the meaning of the 1989 and current versions of section 3C1.1 and, therefore, we consider them in this appeal. *See Howard*, 923 F.2d at 1504 n. 4 (most amendments to the commentary merely clarify).

■■■ We conclude as a matter of law that the defendant's assertions do not justify an enhancement because a pre-sentence assertion cannot be material to sentencing if the assertion's truth requires the jury's verdict to be in error.[15] *Cf. Howard*, 923 F.2d at 1504–05 (failure to repeat to a probation officer information that had already been provided to a DEA agent held to be not material). Clearly, the probation officer would have to disregard the jury's determination, that the defendant agreed to and did possess cocaine with intent to distribute, in order to believe the defendant's assertion to him that he knew nothing about the cocaine and travelled with Dean only because Dean offered the plane ticket in exchange for the defendant's promise to drive a car from Cleveland back to Miami. Therefore, the district court erred in enhancing the defendant's sentence for his post-jury verdict, pre-sentence

---

14. In determining the defendant's sentence, the district court relied on both the defendant's presentence assertions and his denials to Agent Markonni that he was traveling with Dean. However, the government conceded at oral argument that the latter ground was insufficient to justify the enhancement. Therefore, we focus our analysis on the former ground and express no opinion on the sufficiency of the latter ground.

15. We note that the defendant's assertions would appear to be material under a strict reading of the text of application note 5 which, by employing the phrase "if believed," assumes (rather than requires) that the assertions are believable. For example, the defendant's assertions, "if believed," would tend to influence the sentencing court's decision regarding whether to adjust the offense level for the defendant's role in the narcotics counts. *See* U.S.S.G. §§ 3B1.1, 3B1.2 (1989). However, we are of the opinion that the commentary contains an accidental gap, rather than an intentional omission, regarding the particular circumstances presented in this case. Therefore, we impose a judicial gloss on the meaning of "material" in the post-jury verdict, pre-sentence context.

assertions pursuant to section 3C1.1.[16]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the defendant's conviction, but VACATE his sentence, and REMAND the case for resentencing.

---

**16.** Portions of the commentary to former section 3C1.1 and clarifying amendments thereto lend some indirect support to our holding. *See* U.S.S.G. § 3C1.1, appl. note 3 (1989) ("A defendant's denial of guilt is not a basis for application of this provision"); U.S.S.G. § 3C1.1, appl. note 1 (1990) ("A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer … is not a basis for application of this provision."); U.S.S.G. § 3C1.1, appl. note 1 (1990) (same). However, because these comments address merely refusals to admit guilt and denials of guilt, they are inapplicable to the present case. Here, the defendant did slightly more than assert innocence; he went further and told the probation officer an alternative version of the events pertinent to this case.