[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 03-11905

_____

D. C. Docket No. 02-00045-CR-19-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEYAUNTEU STALLINGS,
a.k.a. "Coolio",
MILTON LUCAS,
RICHARD ALLEN HEPBURN,
a.k.a. "Al",
WALTER DEAN JOHNSON,
a.k.a. "Walt",

Defendants-Appellants.

_____

No. 03-12620

_____

D. C. Docket No. 02-00045-CR-11-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUSEBIO PHELPS,
a.k.a. "Ebbie",

Defendant-Appellant.

_____

No. 04-10882

_____

D. C. Docket No. 02-00045-CR-8-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEX SESSION,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(September 7, 2006)**

2

Before ANDERSON, BARKETT and CUDAHY,[*] Circuit Judges.

PER CURIAM:

This appeal stems from a complicated criminal drug conspiracy centered in Atlanta, Georgia. In January 2002, a grand jury returned an indictment charging more than twenty defendants in a conspiracy involving cocaine hydrochloride and heroin. Six defendants are before us on appeal. These six defendants initially entered pleas of not guilty; one later changed his plea. The district court sentenced all the defendants to varying prison sentences, which they timely appealed. We consider defendant Walter Dean Johnson's argument that the district court erred in enhancing his sentence for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) in a separate published opinion. *United States v. Stallings et al.*, ___ F.3d ___ (11th Cir. 2006).

Neyaunteu Stallings appeals his 240-month sentence imposed following a jury verdict finding him guilty of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846 (Count 1) and distribution of cocaine hydrochloride (Count 12). Milton Lucas appeals his 235-month sentence imposed following a jury verdict finding him guilty of conspiracy to possess with intent to distribute at least 5 kilograms of

---

[*] The Honorable Richard D. Cudahy, Circuit Court Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

3

cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) (Count 1). Richard Allen Hepburn appeals his 120-month sentence imposed following (1) his conviction by a jury of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846 (Count 1); and (2) his plea of guilty to conspiracy to possess with intent to distribute at least 100 grams of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(B)(i) and 846, and distribution of at least 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(i) (Counts 16 and 17). Johnson appeals his 168-month sentence imposed following his conviction by a jury of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 1). Eusebio Phelps appeals his 70-month sentence imposed following his plea of guilty to two counts of distribution of cocaine, both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts 9 and 11). Alex Session appeals his 324-month sentence imposed following a jury verdict finding him guilty of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846 (Count 1).

Stallings, Lucas and Session argue that the evidence produced at trial was insufficient to support convictions for the single conspiracy charged in the indictment. Johnson, Lucas and Session argue that the evidence produced at trial

4

was insufficient to support their convictions. Lucas argues that the district court erred (1) in determining the amount of drugs for sentencing purposes attributable to him, and (2) in sentencing him under the federal sentencing guidelines in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621 (2005), by basing his sentence upon a drug amount that was not determined by a jury or admitted by him. Hepburn argues that the district court erred in sentencing him because he was not afforded an opportunity to be interviewed by the government prior to sentencing in an attempt to meet the criteria of U.S.S.G. § 5C1.2 ("safety valve"). Johnson argues that the district court clearly erred in enhancing his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and for possession of a weapon under U.S.S.G. § 2D1.1(b)(1) (we consider the latter argument in a separate, published opinion). Phelps argues that the district court plainly erred in sentencing him under the federal sentencing guidelines in light of *Booker*, 543 U.S. at 244, based upon distribution of 5 to 15 kilograms of cocaine and that the district court's contradictory information regarding his potential period of supervised release constitutes a breach of his plea agreement. Session argues that the district court plainly erred in sentencing him under the federal sentencing guidelines in light of *Booker*, 543 U.S. at 244, by basing his sentence upon a drug amount that was not determined by a jury or admitted by him, by enhancing his sentence under

5

U.S.S.G. § 2D1.1(b)(1), for possession of a firearm and by increasing his sentence under U.S.S.G. § 3C1.1, for obstruction of justice. Session also argues that the district court clearly erred by denying his request for a minor role reduction under U.S.S.G. § 3B1.2.

## I. FATAL VARIANCE

The first issue we consider is whether the evidence that the government introduced at trial was sufficient to support convictions for the single conspiracy charged in the indictment. Stallings, Lucas and Session argue that their convictions must be overturned because the evidence proved multiple, unrelated conspiracies to distribute narcotics rather than one single conspiracy. The evidence, they argue, constitutes a fatal variance from the indictment, which must therefore invalidate their convictions.

Claims of a fatal variance are treated as attacks on the sufficiency of the evidence. *E.g.*, *United States v. Plotke*, 725 F.3d 1303, 1308 (11th Cir. 1984). In reviewing this issue, this Court views the evidence in the light most favorable to the government and considers whether a reasonable jury could have determined beyond a reasonable doubt that a single conspiracy existed. *United States v.*

*Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997). To determine whether a jury could have found that a single conspiracy existed, we review (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) whether the participants in the alleged multiple schemes overlapped. *Id.*

Although this conspiracy is complicated, it is plain that the parties shared at least one common goal sufficient to satisfy the first factor of the single-conspiracy test: the distribution of cocaine in northwest Atlanta. *Id.*; *United States v. Adams*, 1 F.3d 1566, 1583–84 (11th Cir. 1993) (holding that the "common goal" inquiry was satisfied by the common crime of importing marijuana); *United States v. Jones*, 913 F.2d 1552, 1560–61 (11th Cir. 1990) (holding that the "common goal" inquiry was satisfied by the common crime of importing cocaine); *United States v. Khoury*, 901 F.2d 948, 956–57 (11th Cir. 1990) (holding that the "common goal" inquiry was satisfied by the common crime of importing methaqualone). One overall agreement among the various parties to perform different functions to carry out the objectives of the conspiracy indicates that there is indeed one single conspiracy. *United States v. Knowles*, 66 F.3d 1146, 1159 (11th Cir. 1995); *United States v. Cole*, 755 F.2d 748, 764 (11th Cir. 1985). Although the parties here played different roles, each defendant's tasks plainly worked to facilitate the larger goal of

7

cocaine distribution. The government has provided sufficient evidence to satisfy the first inquiry.

Satisfied that the government has established that a common goal existed, we move on to the second and third factors outlined in *Calderon*, which merge in this case. Where many people agree to one ultimate illegal goal and each undertakes a different role to achieve that goal, there is a single conspiracy regardless of the absence of a single participant to supervise, administer or dominate the conspiracy. *Cole*, 755 F.2d at 764 (11th Cir. 1985); *see also United States v. Brito*, 721 F.2d 743, 747 (11th Cir. 1983). Here, perhaps the most compelling evidence that a single conspiracy existed is the substantial overlap of the participants—the participants are all connected to each other in ways relating to the conspiracy's common goal. *Cf. United States v. Chandler*, 388 F.3d 796, 807–08 (11th Cir. 2004) (holding that the evidence varied fatally from the indictment because of lack of such relationships). Those connections, tied together with the evidence detailing each defendant's role in the conspiracy is sufficient to support a single conspiracy. *United States v. LaSpesa*, 956 F.2d 1027, 1031–32(11th Cir. 1992); *United States v. Stitzer*, 785 F.2d 1506, 1518 (11th Cir. 1986).

The defendants rely mainly on a pair of Supreme Court cases holding that it was impermissible for the government to charge a single conspiracy when in fact several separate conspiracies existed. *Kotteakos v. United States*, 328 U.S. 750 (1946); *Berger v. United States*, 295 U.S. 78 (1935). Each of the Supreme Court cases involved a complicated criminal enterprise centered on a common individual. Despite the common individual, however, the government could not show that the others were engaged in a single criminal enterprise. The Supreme Court agreed with the government that the evidence showed "separate spokes meeting in a common center" but noted that the theory was "without the rim of the wheel to enclose the spokes." *Kotteakos*, 328 U.S. at 755. Although no person necessarily sits at the center of the conspiracy here, the common goal of cocaine distribution and the overlap of participants is sufficient to supply the wheel.

Given that the evidence is sufficient to support the government's theory of a single conspiracy, the defendants were not materially and substantially prejudiced. Thus, the defendants have not established that a fatal variance existed between what was charged in the indictment and what was proved at trial.

## II. SUFFICIENCY OF THE EVIDENCE

We next consider whether the evidence presented at trial supports the convictions of Johnson, Lucas and Session. Whether there is sufficient evidence to support a conspiracy conviction is a question of law reviewed de novo. *United States v. Massey*, 89 F.3d 1433, 1438 (11th Cir. 1996). Where, however, a defendant does not move the district court for a judgment of acquittal at the close of the evidence, this Court may reverse the conviction only to prevent a manifest miscarriage of justice. *United States v. Hamblin*, 911 F.2d 551, 556–57 (11th Cir. 1990). Under such a standard of review, an appellate court must find that the evidence on a key element is so tenuous that a conviction would be shocking. *Id.* at 557 n.2. Here, the defendants argue that the evidence presented at their trial was insufficient to support the jury's guilty verdict because (1) they were not knowing and voluntary participants in the conspiracy; and (2) the jury's determination rested on crediting the testimony of unreliable cooperating individuals.

Six cooperating witnesses provided evidence against Lucas and Johnson at trial. These witnesses each testified that they were involved in cocaine transactions with Lucas and Johnson between 1992 and 2001. Two witnesses provided substantive testimony against Session. Those witnesses testified that Session

worked for other members of the conspiracy in that he delivered drugs and picked up money. The witnesses also testified that Session executed another conspirator named Mario Cobb to protect the operation when other members of the conspiracy grew concerned that Cobb would provide information to the police. This evidence is sufficient to support Session's conviction. Although the defendants take issue with the credibility of the cooperating witnesses, they have produced no evidence suggesting a manifest miscarriage of justice; it is well settled that the existence of a conspiracy may be proved by circumstantial evidence such as inferences from the conduct of those alleged to have participated. *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998).

## III. ALLEGED SENTENCING ERRORS

*A. Drug Quantity*

At sentencing the government bore the burden of establishing the drug quantity level by a preponderance of the evidence, and we will reverse the district court's determination of drug quantity only if it was clearly erroneous. *United States v. Mertilus*, 111 F.3d 870, 873 (11th Cir. 1997). "Although sentencing may

be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (citation omitted). In this case, Lucas and Session argue that the district court's drug quantity calculation was clearly erroneous.

The district court sentenced Lucas based upon 150 kilograms or more of cocaine. The court based this finding on testimony at trial by Robert Horton that he and Lucas conducted 100 kilogram cocaine deals "more than twice," and that he took 100 kilograms of cocaine to Lucas's home. It also considered Arevalus Whitehead's testimony that Keaton Young purchased 50 kilograms of cocaine from Lucas and had bought cocaine from him previously. Accordingly, the district court's calculation that Lucas was responsible for at least 150 kilograms of cocaine was not speculative, but was supported by evidence in the record, and it was not clearly erroneous for the district court to sentence him based upon that amount.

The district court sentenced Session based on a drug amount of at least 50 but less than 150 kilograms. The court based this determination in part on Session's concession at sentencing that "the only arguable amount of cocaine would be 50 kilos." This concession is sufficient to support the district court's

12

sentence, and it was therefore not clearly erroneous to sentence Session based upon that amount.

## B. Booker *Error*

Because Lucas, Phelps[1] and Session failed to object in the district court on the basis of the Sixth Amendment, *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), or other related cases, their arguments on appeal are reviewed for plain error. *See* Fed.R.Crim.P. 52(b); *Booker*, 543 U.S. at 267. To satisfy the plain error standard, we must find that (1) the district court committed "error," (2) the error was plain or obvious, and (3) the error "affected substantial rights" in that the error was prejudicial. *United States v. Olano*, 507 U.S. 725, 730-32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

---

[1] Phelps also argues that the 5-year term of supervised release constitutes a breach of his plea agreement, which provided for a 3-year term. This argument was not raised at sentencing and is waived. *See United States v. Nealy*, 232 F.3d 825, 830–31 (11th Cir. 2000). He also argues that the conflicting terms render his plea invalid because it was not knowing and voluntary. This argument is subject to plain-error review. *United States v. Woodard*, 387 F.3d 1329, 1331 (11th Cir. 2004). While the district court likely did err in informing Phelps that he was subject to three years of supervised release, Phelps cannot show prejudice. The record clearly indicates that the district court told Phelps he was subject to a penalty of up to 20 years of imprisonment (240 months) plus three years of supervised release. He ultimately received only 70 months of imprisonment, followed by the 5 years of supervised release. Because his total penalty (70 months plus 5 years of supervised release) is well below his agreed potential penalty (240 months plus 3 years of supervised release), he cannot show substantial prejudice.

13

Concerning the third prong, in most cases the error will be prejudicial if it "affected the outcome of the district court proceedings." *Id.* at 734, 113 S.Ct. at 1778. If these criteria are met, we may correct the plain error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. at 1779 (internal quotations and citation omitted).

In *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." The Court then revisited that rule and clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (emphasis in original). In a footnote, however, the Court explicitly remarked that "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Blakely*, 542 U.S. at 305 n.9.

14

More recently, the Supreme Court in *Booker* found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue [in *Blakely*]." *See Booker*, 543 U.S. at 231. Therefore, the Court concluded that the mandatory nature of the guidelines rendered them incompatible with the Sixth Amendment's guarantee of the right to a jury trial. *Id.* at 749–51. The Court also explicitly reaffirmed its rationale in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756.

We have held that there are two types of *Booker* error: statutory and constitutional. *See United States v. Shelton*, 400 F.3d 1325, 1329-30 (11th Cir. 2005). Specifically, in *Shelton* we determined that there was no Sixth Amendment constitutional violation under *Booker* because the defendant's sentencing enhancements were based on either prior convictions or facts admitted by the defendant. *Shelton*, 400 F.3d at 1329-30. Nevertheless, we held that even when there is no "Sixth Amendment enhancement violation," there is still statutory error under *Booker* "when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." *Id.* at 1330–31.

In *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir.) *cert. denied*, 125 S.Ct. 2935 (2005), we considered an appeal in which the appellant had failed to preserve a *Blakely/Booker* objection in the district court, and the Supreme Court had decided *Booker* while the appellant's sentence was pending on direct appeal. *Rodriguez*, 398 F.3d at 1292–97. Applying plain error review, we determined that the appellant had satisfied the first prong of plain error by showing error because, under a mandatory guideline system, the appellant's sentence had been enhanced as a result of judicially determined facts that went beyond the facts admitted by the defendant or found by the jury. *Rodriguez*, 398 F.3d at 1298.

We, however, ultimately concluded in *Rodriguez* that no plain error had occurred because, under the third prong of plain error review, the appellant had failed to show that the *Booker* error "affect[ed] substantial rights," that is, that the error "must have affected the outcome of the district court proceedings." *Rodriguez*, 398 F.3d at 1299, 1306 (*quoting United States v. Cotton*, 535 U.S. 625, 632, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002)). In reaching this conclusion, we explained that the test for showing that the error "affected the outcome of the district court proceedings" was the formulation of a reasonable probability of a different result, which means a probability "sufficient to undermine confidence in the outcome." *Rodriguez*, 398 F.3d at 1299. We also stated that, under the third

16

prong, "[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." *Rodriguez*, 398 F.3d at 1299.

Applying this third-prong analysis to the facts in *Rodriguez*, we explained that:

> [P]re-*Booker* defendants must establish a reasonable probability that if the district court had considered the guidelines range it arrived at using extra-verdict enhancements as merely advisory, instead of mandatory, and had taken into account any otherwise unconsidered § 3553 factors, the court would have imposed a lesser sentence than it did. That inquiry makes sense because it hooks the prejudice inquiry to the procedural change necessary to remedy the error.

*Rodriguez*, 398 F.3d at 1302. Because we ultimately determined that the record in *Rodriguez* "provide[d] no reason to believe any result [was] more likely than not," we concluded that the appellant had not met his burden of showing that his substantial rights had been affected. *Id.* at 1301. Moreover, we noted that, because the appellant had not met his burden as to the third prong of the plain error test, the Court "ha[d] no occasion to decide how he would have fared under the fourth prong." *Id.*

In the instant case, the district court arguably committed constitutional error by enhancing Lucas, Phelps and Session's sentences. *See Rodriguez*, 398 F.3d at 1299; *see* R22 at 16). The court also arguably committed statutory error by sentencing them under the mandatory guidelines scheme, and both the constitutional and statutory errors are now plain. *See Rodriguez*, 398 F.3d at 1299.

17

Under *Rodriguez*, we conclude that the appellants have not satisfied the third prong of plain error. Specifically, they have neither alleged nor shown that they would have received lesser sentences had the district court considered the guidelines advisory as opposed to mandatory. Moreover, the record does not show that the district court would have been inclined to have imposed lesser sentences but for the then-mandatory nature of the guidelines.

Although the district court sentenced the appellants to the lower end of the guidelines range, the likelihood of a different result would be speculative without a clear statement or sign from the district court that, but for the fact that its discretion was constrained under the guidelines, it would have imposed a lighter sentence. *See Rodriguez*, 398 F.3d at 1301; *United States v. Fields*, 408 F.3d 1356, 1360–61 (11th Cir.) *cert. denied* 126 S.Ct. 221 (2005) (under plain-error review, holding that the fact that the defendant was sentenced to the bottom of the mandatory guideline range is insufficient to satisfy the requirement that the defendant show a reasonable probability of a lesser sentence under an advisory guideline system). Specifically, the district court did not state whether it would have imposed different sentences under an advisory guideline scheme or express regret as to the length of the sentences it imposed under the mandatory scheme. *See United States v. Paz*, 405 F.3d 946, 948–49 (11th Cir. 2005).

Accordingly, it is unclear whether the district court would have imposed different sentences if it had applied the guidelines in an advisory instead of binding fashion. Lucas, Phelps and Session, therefore, have not met the burden of showing a reasonable probability that the result of his sentencing would have been different but for the *Booker* error, and we need not apply the fourth prong of plain error. *See Rodriguez*, 398 F.3d at 1301. Similarly, the Supreme Court's ruling in *Booker* does not entitle them to a new trial or resentencing. *See Booker*, 543 U.S. at 231–35.

*C. Safety-Valve*

A district court's factual determinations and denial of "safety valve" relief under § 5C1.2(a)(5) are reviewed for clear error. *United States v. Camacho*, 261 F.3d 1071, 1072 (11th Cir. 2001).

Section 2D1.1(b)(6) of the sentencing guidelines provides a 2-level reduction for a defendant who meets the five requirements of the safety-valve relief set forth in § 5C1.2. One criterion is that "no later than the time of the sentencing hearing the defendant truthfully provide to the government all information and evidence he has concerning the offense or offenses that were part of the same

19

course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). We have held that the defendant bears the burden to prove eligibility for safety-valve such relief no later than sentencing. *United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000).

In *United States v. Garcia*, 405 F.3d 1260, 1274–75 (11th Cir. 2005), we held that an appellant who sought sentencing under the safety-valve provision was entitled to have his case remanded because the district court failed to grant his motion for a continuance of sentencing for additional debriefing. *Garcia*, 405 F.3d at 1274–75. We noted the following facts in reaching that holding: (1) the appellant, a first time drug offender who did not speak English, underwent a debriefing that was translated by a government agent rather than an independent translator; (2) defense counsel erroneously believed that his client had made a statement sufficient to qualify for safety-valve; (3) he had been assured by government agents that they would conduct additional debriefings; and (4) there was no evidence that the appellant's failure to fully debrief prior to commencement of the sentencing hearing was an attempt to mislead, manipulate, stall or delay. *Id.* at 1274–75.

Hepburn does not argue that he met the criteria of § 5C1.2(a)(5), either in the letter he presented to the government or otherwise. Rather, he argues that the

government was required to afford him an opportunity to meet with it prior to sentencing so that he could disclose information necessary to meet the safety-valve requirement. Hepburn did not, however, request a continuance of the sentencing hearing. He did not claim that he believed prior to sentencing that he had met the safety-valve criteria. Hepburn does not dispute that the letter he submitted omitted information about his involvement in the drug conspiracy and, therefore, was incomplete with respect to his involvement in the criminal scheme. He did not request a continuance, comply with the safety-valve requirements prior to sentencing, or attempt to comply at sentencing. *See Garcia*, 405 F.3d at 1274–75. Therefore, Hepburn is not entitled to safety-valve relief.

*D. Obstruction of Justice Enhancement*

"This Court reviews the district court's interpretation and application of the sentencing guidelines *de novo*." *United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003). When reviewing the application of U.S.S.G. § 3C1.1, we have determined:

> Where the district court must make a particularized assessment of the credibility or demeanor of the defendant, we accord special

21

> deference to the district court's credibility determinations, and we review for clear error. Conversely, where the defendant's credibility or demeanor is not at issue, and the defendant's conduct can be clearly set forth in detailed, non-conclusory findings, we review *de novo* the district court's application of the enhancement.

*United States v. Amedeo*, 370 F.3d 1305, 1318 (11th Cir. 2004) (citations and quotations omitted). Section 3C1.1 provides that a 2-level enhancement may be applied to the base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing . . . ." U.S.S.G. § 3C1.1. The commentary to § 3C1.1 cites "providing materially false information to a judge or magistrate" and "committing, suborning, or attempting to suborn perjury" as examples of conduct to which the enhancement applies. *See id.*, comment. (n.4(b), (f)). The guidelines define a "material statement" as a statement "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6) (2001). We have held that "the threshold for materiality is conspicuously low." *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir. 1992).

The Supreme Court has held that:

> if a defendant objects to a sentence enhancement resulting from h[is] *trial testimony*, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury

22

definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

*United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993) (citations omitted). "[C]ourts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999) (quotation omitted).

The district court did not err by enhancing Johnson's sentence for obstruction of justice. The district court viewed the entirety of Johnson's conduct as warranting the enhancement and specifically pointed to his allowance of the representations by his attorney that he had never been convicted of a crime or even arrested prior to the charges at issue. Because the enhancement was not based upon testimony that occurred at trial, it was not necessary for the district court to make specific factual findings. *See Dunnigan*, 507 U.S. at 95, 113 S.Ct. at 1117. The record supports the conclusion that Johnson, through his attorney, lied to the magistrate judge. Because the magistrate judge lowered the bond amount from $75,000 to $40,000 following the representation that Johnson had no criminal

23

history and had never been arrested, the district court did not clearly err in finding that the misrepresentation was "material," and therefore a sufficient basis to impose an obstruction of justice enhancement. U.S.S.G. § 3C1.1, comment. (n.4(f)); *United States v. Odedina*, 980 F.2d 705, 707 (11th Cir. 1993); *Dedeker*, 961 F.2d at 167.

Nor did the district court err in enhancing Session's sentence for obstruction of justice. We review for clear error the district court's findings of fact necessary for an obstruction of justice enhancement based upon perjury, giving great deference to the credibility determinations of the district court. *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2003). We give due deference to the district court's application of the guidelines to the facts, reviewing it *de novo*. *Singh*, 291 F.3d at 763.

Section 3C1.1 of the sentencing guidelines provides for a 2-level enhancement for defendants who obstruct or impede justice during the course of their case. *Singh*, 291 F.3d at 762-63. This obstruction or impediment of justice may include perjury. *Id.* at 763.

In *United States v. Gardiner*, 955 F.2d 1492, 1495 (11th Cir. 1992), the defendant was convicted of conspiracy to possess cocaine with intent to distribute. *Gardiner*, 955 F.2d at 1495. We held that his presentence assertions to a probation officer that he knew nothing about the cocaine did not support an enhancement for

24

obstruction of justice because the statement was not material to sentencing since its "truth required the jury's verdict to be in error." *Gardiner*, 955 F.2d at 1499. That is, the only way the defendant's statement could be material would be if the probation officer disregarded the jury's verdict altogether.

In *Singh*, we held that four elements must be present for a finding of perjury: (1) testimony under oath or affirmation, (2) that is false, (3) that is material, (4) given with the willful intent of falsehood and not resulting from mistake, confusion, or faulty memory. 291 F.3d at 763 n.4. For purposes of U.S.S.G. § 3C1.1, "'material'. . . means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Singh*, 291 F.3d at 763 (citing U.S.S.G. § 3C1.1 n.6).

In *Singh*, the district court found that the defendant provided false testimony at his sentencing hearing when he denied several instances of illegal conduct allegedly attributable to him and admitted to only a minor part of the crime of which he was convicted. *Singh*, 291 F.3d at 763. In that instance, we determined that the record supported the district court's finding that Singh committed perjury when he testified during his sentencing hearing, noting that the evidence was contrary to Singh's statements. *Id.* We found that his continued denial of the facts

25

was both incredible and "the result of a willful intent to provide false testimony, and cannot possibly be the result of a mistake, confusion, or faulty memory." *Id.*

We have stated that the threshold for materiality under the commentary to § 3C1.1 is "conspicuously low." *Odedina*, 980 F.2d at 707. In *Odedina*, the defendant had failed to reveal all of his aliases to the probation officer and failed to reveal a prior misdemeanor arrest that was made under an alias. *Odedina*, 980 F.2d at 707. The probation officer acknowledged that this misdemeanor conviction was not countable in Odedina's criminal history calculation, but we still found that his failure to provide this information was material, on the basis that, if believed, the information would tend to influence or affect the determination of Odedina's sentence within the appropriate guideline range. *Id.* at 707. We noted that in *Gardiner*, we had "held that presentence assertions contrary to an earlier jury verdict cannot be material to sentencing, because the probation officer would have to disregard the jury's verdict to believe the defendant." *Odedina*, 980 F.2d at 707 n.2. We stated that, unlike in *Gardiner*, the record in *Odedina* did not indicate that the probation officer or the U.S. Attorney's office had information from any other source regarding Odedina's undisclosed aliases or his undisclosed conviction. *Id.*

Here, the jury convicted Session of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841

(b)(1)(A)(ii). He testified at sentencing that he never "ran anything," sold, transported, or delivered cocaine, possessed cocaine with intent to distribute it, or otherwise had any involvement with dealing drugs. Though district court did not expressly apply the factors set forth in *Singh*, *de novo* application indicates that Session's testimony was (1) under oath or affirmation, (2) false, (3) material, and (4) given with the willful intent to falsify and not resulting from mistake, confusion, or faulty memory. *Singh*, 291 F.3d at 763 n.4. Specifically, the statements were material because, if believed by the district court, they might have influenced the determination of Session's sentence. *See Odedina*, 980 F.2d at 707.

*E. Firearms Enhancement*

We "review a sentencing judge's factual findings used to determine the applicability of a weapons enhancement under section 2D1.1(b)(1) for clear error." *United States v. Alred*, 144 F.3d 1405, 1420 (11th Cir. 1998). "Possession of a firearm for sentencing purposes is a factual finding." *United States v. Geffrard*, 87 F.3d 448, 452 (11th Cir. 1996). The decision of whether to impose a § 2D1.1(b)(1) enhancement involves a two-stage determination.

> The commentary to § 2D1.1 explains that this firearm enhancement should be applied if the weapon was

27

present, unless it is clearly improbable that the weapon was connected with the offense. The government has the burden under § 2D1.1 to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence. If the government is successful, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was clearly improbable.

*United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001) (internal quotations and citations omitted). We have stated that "[e]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade." *United States v. Alvarez*, 755 F.2d 830, 849 (11th Cir. 1985). The "site of the charged conduct" includes conduct relevant to the offense of conviction, that is, acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Hunter*, 172 F.3d 1307, 1309 (11th Cir. 1999).

The district court did not clearly err in imposing the firearm enhancement upon Session. Two witnesses testified that Session distributed drugs to them and that he carried at least one weapon every day that they saw him. This testimony is sufficient to connect Session's drug activities with his weapons possession, which is sufficient to trigger the firearms enhancer. With regard to Johnson, however, we conclude that the district court's imposition of a firearms enhancer is clearly

erroneous. We have discussed this aspect of Johnson's sentence is a separate published opinion. *United States v. Stallings et al.* F.3d _____ (11th Cir. 2006).

### *F. Minor-Role Reduction*

Pre-*Booker* standards of review concerning the district court's application of the sentencing guidelines still apply post-*Booker*. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Because *Booker* requires the district court to consult and take into account the guidelines when sentencing a defendant, it necessarily requires that the district court correctly calculate the guideline range. *Crawford*, 407 F.3d at 1178. Accordingly, even post-*Booker*, we review a district court's factual determination regarding whether a defendant is eligible for a reduction for role in the offense only for clear error. *United States v. DeVaron*, 175 F.3d 930, 934 (11th Cir. 1999). The proponent of a role adjustment bears the burden of establishing his role in the offense by a preponderance of the evidence. *Id.* We will not find clear error unless we are "left with a definite and firm conviction that a mistake has been committed." *Crawford*, 407 F.3d at 1178.

Pursuant to U.S.S.G. § 3B1.2, a district court can reduce a defendant's base offense by from two to four levels if the defendant was a "minimal" or "minor"

participant in the offense.  U.S.S.G. § 3B1.2(a) and (b).  A defendant is a minimal participant where he is "among the least culpable of those involved in the conduct of a group."  The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others is indicative of a minimal role, and such adjustments are to be given infrequently.  U.S.S.G. § 3B1.2, comment. (n.4).  A defendant is a minor participant when he "is less culpable than most other participants," but his role could not be described as minimal.  *Id.*, comment. (n.5).  A defendant who is held accountable only for the conduct in which he was personally involved and who performs a limited function in the criminal activity is not precluded from consideration for an adjustment.  *Id.*, comment. (n.3(A)).

In determining a defendant's role in an offense, a district court (1) must consider the defendant's role in the relevant conduct for which he has been held accountable at sentencing, and (2) may also consider his role as compared to that of other participants in his relevant conduct.  *DeVaron*, 175 F.3d at 940, 944.

With regard to the first prong of this test, the district court should grant a downward adjustment for a minor role in the offense only if the defendant can establish that he played a relatively minor role in the conduct for which he has already been held accountable.  *Id.* at 944.  Where the relevant conduct attributed

to a defendant is identical to his charged conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader criminal scheme in which he was a minor participant but for which he was not held accountable. *Id.* at 941.

Here, the court did not clearly err in refusing to grant Session a minor-role reduction. As to the first prong, role in the relevant conduct included conspiring with others to distribute large amounts of cocaine and crack cocaine. Session does not show how his role was minor where evidence set forth at trial showed that he was a part of a large drug trafficking conspiracy. Specifically, his role of holding kilograms of cocaine, storing drugs, running drugs from one location to another, and selling drugs, along with his statement at sentencing that he arguably was responsible for 50 kilograms of cocaine support the district court's refusal to award a minor-role adjustment. *See United States v. Ryan*, 289 F.3d 1339, 1349 (11th Cir. 2002).

As to the second prong, Session's role as compared to that of other participants in his relevant conduct, there was no indication that he was less involved than any other individual convicted of the same conduct. *See DeVaron*, 175 F.3d at 940, 944. For these reasons, Session has not shown clear error. *See Crawford*, 407 F.3d at 1178.

## IV. CONCLUSION

Accordingly, the judgment of the district court is **AFFIRMED** in all respects but in the application of the firearms enhancement in computing Johnson's sentence, which we take up in a separate published opinion. *United States v. Stallings et al.*, _____ F.3d _____ (11th Cir. 2006).