[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 15, 2009
THOMAS K. KAHN
CLERK

No. 08-10327
Non-Argument Calendar

_____

D. C. Docket No. 07-20584-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE GONZALEZ,
STEVEN HARTSFIELD,

Defendants-Appellants.

_____

No. 08-12010
Non-Argument Calendar

_____

D. C. Docket No. 07-20584-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EARNEST PICKETT,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 15, 2009)

Before TJOFLAT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

On July 26, 2007, a Southern District of Florida grand jury returned a six-count indictment against Jose Gonzalez, Steven Hartsfield, Earnest Pickett, Juan Alameda, and Gilbert Guerrero charging them as follows. Count 1 alleged that the defendants conspired to possess with intent to distribute a mixture and substance containing five kilograms or more of cocaine, in violation of 21 U.S.C. § 846(b)(1)(A). Count 2 charged the defendants with attempting to possess the mixture and substance referred to in Count 1, in violation of 21 U.S.C. § 841(a)(1). Count 3 alleged that the defendants conspired to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). Count 4 alleged that they attempted to commit the robbery referred to in Count 3, in violation of 18 U.S.C. § 1951(a). Count 5 charged the defendants with carrying a firearm in relation to the drug trafficking crimes alleged in Counts 1 and 2, in violation of 18 U.S.C. § 924(c)(1)(A). Count 6 charged Gonzalez and Hartsfield with possession of a firearm by a convicted

2

felon, in violation of 18 U.S.C. § 922(g)(1).

These charges grew out of a sting operation set up by a Miami-Dade Police Department Street Terror Offender Program, a task force of federal and state law enforcement agencies. In March 2007, a confidential informant, Modesto Garcia, informed two Miami-Dade detectives that (defendant) Alameda and a group of confederates were interested in committing a robbery of a drug stash house. One of the detectives, acting under cover, posed as a drug dealer, whose job was to secure cocaine flown in from Colombia and to deliver it to his employers in Miami. He told Alameda that he wanted to rob his employers because they owed him money. Alameda agreed to assist him in carrying out the robbery.

By July 5, 2007, preparations for a robbery were in place. The undercover detective told Alameda that a delivery of cocaine would be arriving from Colombia within a week. On July 12, he called Alameda and informed him that the cocaine had arrived and that it would be delivered to the stash house, a local warehouse, the next day. On July 13, the defendants then gathered in Miami and met Garcia at a Home Depot parking lot. Garcia had driven there in his Ford Expedition, which was equipped with video surveillance camera. While under the task force's surveillance, Alameda placed an AK-47 assault rifle in Garcia's Expedition, and Gonzalez, armed with a handgun, Hartsfield, and Guerrero got into the Expedition

3

with Garcia. Alameda and Pickett went to Alameda's car, and the two vehicles drove to the warehouse. They were arrested on arrival.

All five defendants entered pleas of not guilty. On September 21, 2007, Guerrero, and Alameda pled guilty to Counts 1 through 5 of the indictment. Gonzalez, Hartsfield, and Pickett elected to stand trial. Guerrero, who was cooperating with the Government, would testify against them. The trial began on September 25, 2007. Five days later, on October 1, the jury returned their verdicts, convicting Gonzalez on all counts,[1] Hartsfield guilty on Counts 3 through 6, and Pickett on Counts 3 and 4. Following the imposition of sentence, Gonzalez, Hartsfield, and Pickett appealed. Pickett's appeal having been filed separately has been consolidated with Gonzalez and Hartsfield's. All three challenge their

---

[1] Although neither the government nor Gonzalez has noted the clerical errors in the judgment the court entered against Gonzalez, we do so sua sponte and remand with instructions that the district court correct the errors. United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006). We have done this where the statute cited in the judgment and commitment order was incorrect. United States v. Anderton, 136 F.3d 747, 751 (11th Cir. 1998). The judgment aginst Gonzalez does not list the correct statutory provisions he violated. The judgment as to Counts 1, 2, and 6 are correct, but is incorrect as to Counts 3, 4, and 5. In Count 3, Gonzalez was charged with conspiracy to obstruct, delay, and affect commerce by means of robbery, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3). However, the judgment lists "21 U.S.C. § 1951(a)" as violated. In Count 4, Gonzalez was charged with attempt to obstruct, delay, and affect commerce by means of robbery, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3), but similarly, the judgment lists "21 U.S.C. § 1951(a)." In Count 5, Gonzalez was charged with carrying a firearm during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. The judgment, however, lists "18 U.S.C.(c)(1)(A)" as the violation. Accordingly, we affirm Gonzalez's convictions, but vacate the district court's judgment and remand the case to allow the court to amend the judgment to reflect the correct statutory provisions violated.

4

convictions; Hartsfield also challenges his sentences.[2]

## I.

### A.

We begin our consideration of these appeals by delineating the elements of the offenses alleged in the several counts of the indictment and what the government had to do to prove them. We first take up § 1951(a), the Hobbs Act, then §§ 924(c)(1) and 922(g)(1).

"The Hobbs Act prohibits robbery or extortion, and attempts or conspiracies to commit robbery or extortion, that in any way or degree obstruct, delay, or affect commerce or the movement of any article or commodity in commerce." United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001) (internal quotation marks and punctuation omitted). Section 1951(a) of Title 18 provides that:

> [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

---

[2] The district court sentenced Hartsfield as follows: concurrent sentences of 240 months' imprisonment on Counts 3 and 4, 180 months' imprisonment on Count 6, 60 months of which are consecutive to the Counts 3 and 4 sentences, and 60 months' imprisonment on Count 5, to be served consecutively to the sentences on Counts 3, 4, and 6, for a total term of imprisonment of 360 months.

18 U.S.C. § 1951(a).

To prove a Hobbs Act conspiracy (Count 3), the government had to prove that: "(1) two or more persons agreed to commit a robbery encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal." United States v. To, 144 F.3d 737, 747-48 (11th Cir. 1998). "Although mere presence is inadequate to establish guilt . . . it is material, highly probative, and not to be discounted." United States v. Gamboa, 166 F.3d 1327, 1332 (11th Cir. 1999) (internal quotation marks and citation omitted).

"Because the Hobbs Act, by its own terms, encompasses the inchoate offenses of attempt and conspiracy, the interstate nexus required to prove a Hobbs Act conspiracy may be established upon evidence that *had* the conspiratorial objective been accomplished, interstate commerce *would have been* affected." United States v. Orisnord, 483 F.3d 1169, 1177 (11th Cir.), cert. denied, 128 S.Ct. 673 (2007) (emphasis added). The type of evidence required for the government to satisfy its burden of proof concerning the interstate commerce nexus under the Hobbs Act differs depending on whether the defendant is charged with inchoate offenses of conspiracy and attempt, on the one hand, or a substantive offense, on the other. United States v. Le, 256 F.3d 1229, 1232 (11th Cir. 2001). Where a

6

defendant is charged with conspiracy (Count 3) or attempt (Count 4) to violate the Hobbs Act, "the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce or by evidence of actual, de minimis impact." Id. (citations omitted). In the case of a substantive Hobbs Act offense, the "impact on commerce does not need to be substantial; all that is required is minimal impact." Id. Moreover, that the intended victims and narcotics were fictional in a sting operation is irrelevant to establishing the interstate commerce jurisdictional requirement for a conviction under the Hobbs Act. United States v. Taylor, 480 F.3d 1025, 1027 (11th Cir.), cert. denied, 128 S.Ct. 130 (2007).

To establish a violation of 18 U.S.C. § 924(c)(1) (Count 5), the government had to demonstrate beyond a reasonable doubt that the defendant (1) knowingly (2) possessed a firearm (3) during and in relation to a drug trafficking crime or a crime of violence. United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008); 18 U.S.C. § 924(c)(1)(A). A "crime of violence" means an offense that is a felony and either (1) has as an element the use or attempted use of physical force against a person or (2) by its nature involves a substantial risk that physical force against a person may be used in the course of committing the offense. 18 U.S.C. §924(c)(1)(D)(3). An attempted robbery constitutes a crime of violence under § 924(c)(1)(A). See United States v. Hooper, 270 Fed. Appx. 929, 930 (11th Cir.),

7

cert. denied, 129 S.Ct. 429 (2008) (unpublished) (finding evidence sufficient to support a § 924(c) conviction when a defendant used a firearm during an attempted robbery). Further, the government is not required to show to a "scientific certainty" that a defendant was carrying a gun, nor is it required to introduce the gun into evidence. United States v. Woodruff, 296 F.3d 1041, 1049 (11th Cir. 2002).

To convict a defendant of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (Count 6), the government had to prove beyond a reasonable doubt that (1) the defendant was a convicted felon, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. United States v. Deleveaux, 205 F.3d 1292, 1296-97 (11th Cir. 2000).

In this case, the government could prove, through direct or circumstantial evidence, the first element under both §§ 922(g)(1) and 924(c) – knowing possession of a firearm – either actual or constructive possession. United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." Id. Mere presence near contraband or awareness of its location, is insufficient to establish possession. United States v. Gardiner, 955 F.2d 1492, 1495 (11th Cir. 1992). We have found

8

sufficient evidence of constructive possession of a gun that was found in the glove compartment of a car in which the defendant was a backseat passenger, as the jury could "find that the firearm was being carried by [the defendant] in the vehicle." United States v. Farris, 77 F.3d 391, 395-96 (11th Cir. 1996).

B.

Pickett argues that the district court erred by denying his motion for judgment of acquittal because the evidence was insufficient for a jury to conclude that he conspired or attempted to commit a Hobbs Act robbery. Hartsfield argues, independently, that there was insufficient evidence for a reasonable juror to find that he conspired or attempted to commit a Hobbs Act robbery, possessed a firearm or ammunition, or knowingly possessed a firearm in relation to a crime of violence.[3] Hartsfield asks us not to rely on Guerrero's testimony in reviewing the

---

[3] The Government argues that Hartsfield did not properly adopt the briefs of his codefendants. In his appellate brief filed before either of his codefendants submitted their briefs, Hartsfield expressly raises the issues set forth above, but wishes to adopt the brief Pickett filed in his appeal and all "common issues" of the codefendants.

Federal Rule of Appellate Procedure 28 states, "In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief." Fed. R. App. P. 28(i). According to our local rules, parties wishing to adopt any part of the brief of another party "shall include a statement describing in detail which briefs and which portions of those briefs are adopted." 11th Cir. R. 28-1. Normally, defendants, in non-consolidated appeals, may not automatically adopt and rely on briefs of another case unless they separately move for adoption and the motion is granted. United States v. Bichsel, 156 F.3d 1148, 1150 n.1 (11th Cir. 1998). However, a defendant, in a consolidated appeal, may adopt a codefendant's argument by specific reference in the initial appellate brief. United States v. Gray, 626 F.2d 494, 497 (5th Cir. 1980). Sufficiency arguments are "too individualized to be generally adopted." United States v. Cooper, 203 F.3d 1279, 1285 n.4 (internal quotations marks and citation omitted).

9

sufficiency of the evidence because it is "incredible as a matter of law." Gonzalez argues that the evidence was insufficient for the jury to find beyond a reasonable doubt that he was predisposed to commit the charged crimes and therefore reject his entrapment defense.

A claim that the evidence was insufficient to convict is reviewed de novo. United States v. Nolan, 223 F.3d 1311, 1314 (11th Cir. 2000). To determine whether appellants' convictions should stand, we view the evidence in the light most favorable to the government and affirm, based on this evidence, "any rational trier of fact could have found the essential elements of the crime [at issue] beyond a reasonable doubt." Id. (internal citation and quotation marks omitted). We will not disturb the district court's denial of appellants' motions for a judgment of acquittal unless there is no reasonable construction of the evidence under which the jury could have found guilt beyond a reasonable doubt. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

Determinations of credibility of witnesses fall within the exclusive province

---

In this case, Hartsfield did not properly adopt the arguments of either Pickett or Gonzalez because he did not designate the pages of any briefs that he wished to adopt or otherwise describe in detail the portions that he wished to adopt. See 11th Cir. R. 28-1. Moreover, Pickett only raises sufficiency of the evidence claims, which are "too individualized to be generally adopted." See Cooper, 203 F.3d at 1285. Nevertheless, the technical failure to adopt his codefendants' sufficiency of the evidence arguments is not critical because Hartsfield raises such an issue on his own.

10

of the jury and may not be revisited unless the testimony is "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). "For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face." Id. (internal quotation marks and citation omitted). The testimony must consist of facts that the witness physically could not have possibly observed or "events that could not have occurred under the laws of nature." Id. The fact that a witness thought that the witness lied in the past or thought that the testimony would benefit him does not make the testimony incredible. Id. Even the uncorroborated testimony of a single accomplice may support a conviction, if the testimony is not on its face incredible or otherwise insubstantial. United States v. Sabin, 526 F.2d 857, 859 (5th Cir. 1976).

Hartsfield asks us to disregard Guerrero's testimony as not credible. If we do that, he submits, we must set aside his convictions for lack of sufficient evidence. We cannot say that Guerrero's testimony was "not incredible as a matter of law" because, even though it contradicted testimony of another witness, the testimony was not "unbelievable on its face." See Calderon, 127 F.3d at 1325. The jury was free to make its own credibility determinations based on the competing evidence, see id., and apparently believe much of what Guerrero had to say. With the foregoing principles in mind, we consider whether the government's

11

cases against Pickett and Hartsfield were sufficient to withstand their motions for

judgment of acquittal.[4]

1.

As to the Hobbs Act conspiracy charge in Count 3, Guerrero testified that

Pickett and Hartsfield knew about the conspiracy, as they discussed the robbery in

the vehicle on the way to meeting Garcia. Further, Guerrero testified that Pickett

and Hartsfield agreed to go inside the house with firearms and grab the cocaine.

Additionally, the jury was entitled to infer from Pickett's post-arrest statement to

Alameda asking, "What about the dope," and Alameda's response, "There was

never no dope," that Pickett knew the goal of the conspiracy was to commit a

robbery for cocaine. The interstate nexus was sufficient because, as in Taylor, the

conspiratorial aim was to rob a stash house of a narcotics organization. See Taylor,

480 F.3d at 1027. Thus, there was sufficient evidence for the jury to find that

Pickett and Hartsfield knowingly agreed to participate in a narcotics robbery.

Regarding the attempted Hobbs Act robbery charged in Count 4, the

evidence shows that Pickett and Hartsfield acted with the kind of culpability

required to commit a robbery and that they engaged in substantial steps toward the

---

[4] At this juncture, we acknowledge that Hartsfield seeks a new trial on the ground that the district court's cumulative errors denied him a fair trial. His cumulative-error argument is frivolous and therefore requires no further comment.

12

commission of the robbery. Pickett and Hartsfield met Garcia at a prearranged location and time and traveled to a warehouse where they were supposed to retrieve a vehicle that they would use to hide the cocaine. Garcia was then supposed to take them to the stash house. Additionally, law enforcement agents seized brass knuckles in a compartment near Pickett's seat and three black stockings from Hartsfield's pockets. Considering these facts, a reasonable juror could find that Pickett and Hartsfield attempted to commit a narcotics robbery.

2.

Picket was not convicted on the § 924(c)(1) firearm charge of Count 5, but Hartsfield was. The evidence against him was overwhelming. The police recovered an assault rifle and handguns in Garcia's vehicle, in which he was a passenger. Guerrero testified that, while on the way to the robbery, Hartsfield discussed using one of the handguns to steal the cocaine. He had constructive possession of the handgun because he was not only physically near the gun, but he also had the power and intent to use it. Given Guerrero's testimony, the jury apparently found that there was a nexus between Hartsfield's constructive possession of the handgun and the attempted drug robbery.

3.

Hartsfield (and Gonzalez) were charged in Count 6 with the § 922(g)(1)

13

offense. Hartsfield stipulated that (1) he was a convicted felon and (2) that the firearm was in or affected interstate commerce; thus, the only element at issue was whether he knowingly possessed a firearm. In light of our discussion in subpart 2 above, we must conclude that there was sufficient evidence for the jury to convict Hartsfield on Count 6.

4.

Gonzalez sole attack on the sufficiency of the evidence is that the government failed as a matter of law to establish his predisposition to engage in the criminal activity alleged in the indictment. Put another way, the court should have granted him judgment of acquittal on the basis of his entrapment defense. At trial, he testified that he knew about the attempted robbery plan, but stated that he only joined in the plan because Garcia threatened him.

We review a jury's rejection of an entrapment defense <u>de novo</u>, viewing all of the evidence and inferences in favor of the government. <u>United States v. Francis</u>, 131 F.3d 1452, 1456 (11th Cir. 1997). Our review is limited to determining whether the government presented sufficient evidence to the jury for it reasonably to have concluded that the defendant was predisposed to take part in the crime. <u>Id.</u> We cannot overturn the jury's verdict if there is any reasonable construction of the evidence that would allow the jury to have found the defendant

guilty beyond a reasonable doubt. Id. If, as here, the defendant testifies, the jury may conclude that the opposite of the testimony is true and use the statement as substantive evidence of his guilt. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

An affirmative defense of entrapment consists of two elements: (1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant to commit the crime. United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002). "[T]he defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." Id. "Predisposition is a fact intensive inquiry into the defendant's readiness and willingness to engage in the crime absent any contact with the government's officers or agents." Francis, 131 F.3d at 1456.

Predisposition may be demonstrated by the following: (1) the defendant's ready commission of the charged crime; and (2) evidence that the defendant had the opportunity to back out of the illegal transaction, but failed to do so. United States v. Miller, 71 F.3d 813, 816 (11th Cir. 1996).

Here, the evidence clearly demonstrated Gonzalez's predisposition to commit the charged crimes: Gonzalez participated in a meeting to discuss the

robbery plans on July 5, 2007, and he failed to back out of the plans by the day of the planned robbery, July 13. On July 13, he rode with his co-conspirators to meet Garcia, who was supposed to escort them to the stash house. Upon meeting him, Gonzalez removed a handgun from his waistband and concealed it underneath his seat in Garcia's vehicle. He also asked his co-conspirators whether he would have to beat someone during the robbery. After his arrest, Gonzalez initially told the police that he was on his way to a strip club, but later confessed that he was going to commit a robbery. Law enforcement officers seized numerous items from Garcia's vehicle, including an AK-47 assault rifle, ammunition, a bayonet, a pistol, a handgun, a black scarf, camouflage gloves, and a bandana. They recovered a stun gun and knife from Gonzalez's person.

In addition, Gonzalez's previous conviction for possession of marijuana, although not dispositive, was relevant in showing a predisposition for committing drug offenses. Even though he did not have a prior firearms conviction, the jury was entitled to infer that he was willing to carry a firearm and use the firearm during the robbery based on surveillance tapes taken from Garcia's vehicle showing him removing a handgun from his possession. See Miller, 71 F.3d at 816-17.

Moreover, Gonzalez testified that he felt threatened by Garcia to participate

16

in the robbery, but the jury was free to believe that the exact opposite was true. See Brown, 53 F.3d at 314. Since there was sufficient evidence to prove Gonzalez's predisposition to commit the crimes charged, it is unnecessary to discuss whether Gonzalez produced evidence of inducement.

II.

A.

Hartsfield argues that the district court infringed his Fifth and Sixth Amendment rights by enhancing his Count 6 sentence under § 924(e) and U.S.S.G. § 4B1.3(a), without having the underlying convictions alleged in the indictment and found by the jury beyond a reasonable doubt.

The armed career criminal guideline states, "A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4(a). Section 924(e)(1) provides that "a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1).

In Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court held that the indictment need not allege and the jury need not find beyond a reasonable doubt that the defendant had prior

17

convictions in order to enable the district court to use those convictions to enhance his sentence.  Id., 523 U.S. at 226-27, 118 S.Ct. at 1222.  "[The] contention that the district court lacked the authority to sentence [the defendant] as an armed career criminal because he did not admit in his guilty plea to the facts necessary to being one is foreclosed by Almendarez-Torres . . . ."  United States v. Johnson, 528 F.3d 1318, 1322 (11th Cir. 2008).  The Supreme Court in Apprendi explicitly declined to overrule Almendarez-Torres.  Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2363, 147 L.Ed.2d 435 (2000).  Further, in United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005), we held that the decision in Almendarez-Torres was "left undisturbed by Apprendi, Blakely,[5] and Booker,[6]" and that "a district court does not err by relying on prior convictions to enhance a defendant's sentence."  Shelton, 400 F.3d at 1329.

Because the indictment did not have to allege and the jury did not have to find beyond a reasonable doubt that Hartsfield had the prior convictions at issue, the district court was authorized to use those convictions to enhance his sentence under § 924(e) and U.S.S.G. §4B1.4.

B.

---

[5] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[6] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

18

Hartsfield argues that the district court erred in refusing to apply a two-level minor-role reduction under U.S.S.G. § 3B1.2(b) in determining his sentence range under the Sentencing Guidelines. A district court's determination of a defendant's role in an offense constitutes a factual finding to be reviewed only for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999). The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a mitigating role reduction. Id. at 939.

The Guidelines provide for a two-level reduction for a minor participant, which is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 and comment. (n. 5). The district court applies a two-part analysis to determine whether to award a downward adjustment. Rodriguez De Varon, 175 F.3d at 940-41. The court first determines the defendant's role in the criminal activity and next compares the defendant's conduct to that of his cohorts. Id. at 940-41, 944; see also U.S.S.G. § 3B1.2, comment. (n.3). These factual inquiries "are properly consigned to the experienced discretion of the district judge." Rodriguez De Varon, 175 F.3d at 938.

Here, the district court did not clearly err by denying Hartsfield a minor-role reduction because the record shows that he did not play a minor role. He drove

19

Alameda's vehicle to meet Garcia, while the vehicle was loaded with firearms and ammunition. Hartsfield's role was to go inside the warehouse with Pickett and steal the cocaine.

## C.

Hartsfield argues that the district court erred in refusing to grant a downward departure from the Guidelines sentence range for having a diminished capacity due to his mental incapacity under U.S.S.G. § 5K2.13. Section 5K2.13 provides that court may depart downward from the defendant's prescribed sentence if the defendant "was suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13. "We may not review a district court's refusal to grant a downward departure unless the court mistakenly believed that it lacked the authority to grant such a departure." United States v. Hansen, 262 F.3d 1217, 1256 (11th Cir. 2001); see also United States v. Fossett, 881 F.2d 976, 979-80 (11th Cir. 1989) (holding that we cannot review a district court's refusal to grant a downward departure unless the court erred in concluding it did not have authority to depart).

Our review of the district court's decision to deny Hartsfield a downward departure for a reduced mental capacity is precluded because Hartsfield does not allege and the record does not show that the district court mistakenly believed that it lacked the authority to grant a downward departure for a reduced mental

20

capacity.

## D.

Hartsfield does not challenge the district court's calculation of the Guidelines sentence range for any of the Counts of conviction, but he argues that his combined sentences of 360-months' imprisonment are unreasonable given the nature and circumstances of the offense and his history and characteristics.[7] As Hartsfield properly notes, we review sentences under the Guidelines for reasonableness. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).[8] "Our

---

[7] See supra note 1. The consecutive sentence of 60 months on Count 5 was mandated by law, 18 U.S.C. § 924(c)(1)(A)(i) and (D)D(ii). The minimum sentence on Count 6 was 180 month as prescribed by statute, 18 U.S.C. § 924(e)(1). The court chose to make 60 months of that minimum sentence consecutive to the sentences on Counts 3 and 4. In sum, under these statutes, the court had to sentence Hartsfield to 180 months on Count 6 and a consecutive 60 months on Count 5, for a total of 240 months on those two counts. The term of imprisonment for Counts 3 and 4 was 0 to 20 years' imprisonment, 18 U.S.C. § 1951(a). The Guideline governing the Hobbs Act convictions, Counts 3 and 4, was provided by U.S.S.G. § 2B1.3. The Guideline governing Count 6 was provided by U.S.S.G. § 2K2.1. The district court grouped these three counts together pursuant to U.S.S.G. § 3D1.2(b). The court held Hartsfield accountable for 70 kilograms of cocaine. Therefore, the Guideline providing the base offense level was U.S.S.G. § 2D1.1 via § 2X1.1. Under § 2D1.1(a)(3), an offense involving at least 50 kilograms but less than 150 kilograms of cocaine had a base offense level of 36. Hartsfield's criminal history category was VI. Coupled with an offense level of 36, this yielded a sentence range for Counts 3, 4 and 6 of 324 to 405 months's imprisonment.

[8] Booker did not change a district court's obligation to follow statutory mandatory minimum sentences. See Shelton, 400 F.3d at 1333 n. 10. When a district court correctly imposes a statutory mandatory minimum sentence, any error in the Guidelines calculation is harmless, and we need not address the error. United States v. Raad, 406 F.3d 1322, 1323 n. 1. Thus, we acknowledge that Hartsfield's reasonableness argument does not apply to his mandatory minimum sentence for carrying a firearm during a drug trafficking crime ("Count 5").

review for reasonableness is deferential, and the party challenging the sentence has the burden of establishing unreasonableness." Id. Sentencing decisions are reviewed for an abuse of discretion. Gall v. United States, 552 U.S. ___, ___, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).

A sentence may be procedurally unreasonable if the district court improperly calculates the guideline range, treats the guidelines as mandatory rather than advisory, fails to consider the appropriate 18 U.S.C. § 3553(a) sentencing factors, selects a sentence based on clearly erroneous facts, or fails to explain adequately the chosen sentence. Id. After we have determined that the sentence is procedurally sound, Gall directs us to review the substantive reasonableness of the sentence under an abuse-of-discretion standard. Id. The review for substantive reasonableness involves examining the totality of the circumstances, including the extent of any variance from the Guidelines sentence range. Id. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

Post Booker, district courts first must correctly calculate and consult the guideline range, and second, must consider the § 3553(a) factors. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the

22

defendant; (2) the need to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment for the offense, to protect the public, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines' range; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants with similar records; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1)-(7).

In its consideration of the § 3553(a) factors, the district court need not discuss each factor explicitly. Talley, 431 F.3d at 786. "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Id. Further, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,]" and we "will not substitute [its] judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir.), cert. denied, 128 S.Ct. 671 (2007).

Hartsfield has abandoned any challenge to the district court's sentence range calculations, as he assumes the ranges were correct. Sepulveda v. U.S. Att'y Gen., 378 F.3d 1260, 1262 n.1 (11th Cir. 2004) (holding that "[w]hen an appellant fails

to offer argument on an issue, that issue is abandoned"). His sentences are otherwise procedurally reasonable, as the record indicates the district court considered his sentence ranges as advisory and considered the sentencing factors of § 3553(a). In particular, the record shows the court considered Hartsfield's history and characteristics.

Likewise, Hartsfield's sentences are substantively reasonable given his criminal history and his intended role in the offense. Hartsfield faced a statutory maximum sentence of life imprisonment for all counts, but the district court only sentenced him to a total of 360-months' imprisonment, the bottom of the applicable sentence range. Therefore, the record supports the district court's conclusion that sentences totaling 360 months was appropriate.

## III.

We affirm the convictions of Gonzalez, Hartsfield, and Pickett, and the sentences Hartsfield received. We vacate in part, however, and remand the district court's judgment in Gonzalez's case for correction in accordance with this opinion.

AFFIRMED, in part; VACATED, in part, and REMANDED, with instructions.