[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14527

_____

D.C. Docket No. 1:18-cr-20323-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NELSON NEGRIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 12, 2020)

Before WILSON, MARCUS, and BUSH,* Circuit Judge.

PER CURIAM:

_____

* Honorable John K. Bush, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

Nelson Negrin pled guilty for failure to appear for sentencing, in violation of 18 U.S.C. § 3146(a)(1).  In calculating his sentencing guideline range, the district court applied a six-level increase in Negrin's offense level under U.S.S.G. § 2J1.6(b)(2)(B).[1]  Negrin appeals his sentence, and we affirm.

## BACKGROUND

A grand jury charged Negrin with one count of conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) (Count 1), and two counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A (Counts 12 and 13).  Pursuant to a plea agreement, Negrin agreed to plead guilty to Count 12 only.  In exchange for his guilty plea, the government agreed to dismiss Counts 1 and 13 of the indictment after Negrin was sentenced.  But Negrin failed to appear for his sentencing hearing.  Later, a grand jury charged Negrin with failure to appear in violation of 18 U.S.C. § 3146(a)(1); he pled guilty to this charge.

Section 2J1.6 of the Sentencing Guidelines enumerates the sentencing considerations for a defendant's failure to appear.  Generally, the base offense level for failure to appear is six.  U.S.S.G. § 2J1.6(a)(2).  Courts must add levels for specific offense characteristics.  *Id.* § 2J1.6(b)(2).  If the "underlying offense" for which the defendant failed to appear was punishable by a term of imprisonment of five to 15 years, courts must increase the offense level by six.  *Id.*

---

[1] All Sentencing Guideline citations are to the November 1, 2016 Manual.

2

§ 2J1.6(b)(2)(B). But if the underlying offense is punishable by a term of less than five years, courts must increase the offense level by three. *Id.* § 2J1.6(b)(2)(C).

In Negrin's presentence investigation report (PSR), Probation applied the base offense level of six under § 2J1.6(a)(2). It also added three levels for a specific offense characteristic under § 2J1.6(b)(2)(C), as Count 12—the count Negrin pled guilty to—was punishable by a maximum term of imprisonment of less than five years. After applying a two-level reduction for acceptance of responsibility, Probation's suggested guideline range was 15 to 21 months.

The government objected to Probation's calculation. It argued that the underlying offense for purposes of § 2J1.6(b)(2) is the charged offense for which Negrin would receive the most severe possible sentence. Since Count 1—a count punishable by up to five years' imprisonment—was not yet dismissed when Negrin failed to appear, the government requested that the district court apply a six-level increase under § 2J1.6(b)(2)(B).

Before the sentencing hearing, Probation explained that "underlying offense" is defined by the Guidelines as "the offense in respect to which the defendant failed to appear." *See id.* § 2J1.6, comment. (n.1). So, because Negrin pled to Count 12 and was to be sentenced on that count, the underlying offense was Count 12. Negrin agreed with Probation. He further argued that although Counts 1 and 13 had not yet been dismissed, he was no longer subject to prosecution for

3

either count, as the government was bound to dismiss them when he pled to Count 12 and the district court accepted his plea. Negrin also asserted that his failure to appear for sentencing could not have violated the plea agreement because the agreement was silent on this matter and the plea agreement's integration clause barred any implicit agreements.

At the sentencing hearing, the district court remarked that although a defendant is typically adjudged guilty at the time a plea is accepted, the plea and agreement could each be vacated until the judgement was entered. Further, the court noted that Negrin's bond contract required him to appear before the court for sentencing on the indictment, which included all counts. The court accepted the government's argument and directed that the specific offense characteristic include the six-level adjustment under § 2J1.6(b)(2)(B). Negrin's recalculated guideline range was 24 to 30 months. Ultimately, the district court sentenced Negrin to 22 months' imprisonment, to be served after his 24-month sentence for aggravated identity theft. Negrin renewed his objection to the six-level adjustment, preserving it for appeal.

## STANDARDS OF REVIEW

We review a district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015), *cert. denied sub nom. Huarte v. United States*, ___ U.S. ___, 136 S. Ct. 268 (2015).

4

We interpret the Guidelines "in light of their Commentary and Application Notes, which are binding unless they contradict the Guidelines' plain meaning." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). And we review a district court's findings on the scope of a plea agreement for clear error. *Raulerson v. United States*, 901 F.2d 1009, 1012 (11th Cir. 1990).

## DISCUSSION

Section 2J1.6(b)(2) of the Guidelines provides for an enhancement to a defendant's base offense level for a failure-to-appear conviction. The extent of the enhancement is based on the term of the imprisonment for the "underlying offense." U.S.S.G. § 2J1.6(b)(2). The Application Notes clarify that the underlying offense is "the offense in respect to which the defendant failed to appear." *Id.* § 2J1.6, comment. (n.1). If the underlying offense was punishable by five to 15 years' imprisonment, six levels are added, but if the underlying offense was punishable by less than five years' imprisonment, three levels are added. *Id.* § 2J1.6(b)(2)(B)–(C). We have said that the term "punishable" in § 2J1.6(b)(2) refers to the statutory maximum sentence for an offense, as opposed to the actual sentence imposed. *United States v. Gardiner*, 955 F.2d 1492, 1498 n.11 (11th Cir. 1992).

Penalties for failure to appear under § 2J1.6(b)(2) "reflect the severity of the punishment that [the defendant] faced if convicted as charged"; "[o]therwise, the

penalty for failure to appear will not provide an accused with sufficient incentive to face the judicial music." *United States v. Williams*, 932 F.2d 1515, 1516–17 (D.C. Cir. 1991); *see also United States v. Nelson*, 919 F.2d 1381, 1384 (9th Cir. 1990) (affirming the trial court's use of an offense for which the defendant was later acquitted to increase defendant's failure-to-appear enhancement, because a defendant "facing a potentially longer prison term has more of an incentive to flee, and thus a longer sentence [for failure to appear] could be seen as necessary to deter him");[2] *United States v. Muhammad*, 146 F.3d 161, 166 (3d Cir. 1998) (recognizing that the Guidelines account for "the likelihood that a defendant who is facing a more serious charge with a longer possible jail term has a greater incentive to flee" than one who faces a less-serious charge and jail term).

To that end, for purposes of § 2J1.6(b)(2), the "underlying offense" is found among the offenses charged in the indictment. *See United States v. Magluta*, 198 F.3d 1265, 1282 (11th Cir. 1999) (holding that "underlying offense" under § 2J1.6(b)(2) is "the most serious of the counts referred to in the indictment"), *vacated in part on other grounds*, 203 F.3d 1304 (11th Cir. 2000); *see also Williams*, 932 F.2d at 1516 (affirming the trial court's decision to base defendant's

---

[2] *Nelson* cites to an older iteration of the Guidelines' failure-to-appear provision. Though the provision has since been amended, the relevant portions are the same. *Compare* United States Sentencing Commission, *Guidelines Manual*, § 2J1.6(b)(2) (Nov. 2016) *with* United States Sentencing Commission, *Guidelines Manual*, § 2J1.6(b) (Nov. 1989).

enhancement for failure to appear on the offense of his indictment rather than the offense of conviction because "the enhancement under section 2J1.6(b) depends . . . on the severity of the potential penalty").

Turning to the case before us, the application of § 2J1.6(b)(2) is fairly straightforward. Through a plea bargain, Negrin agreed to plead guilty to Count 12 and, in exchange, the government agreed to dismiss Counts 1 and 13 after Negrin was sentenced. But Negrin failed to appear at his sentencing hearing, and the government had not yet moved to dismiss Counts 1 and 13. So when Negrin failed to appear, he committed a new offense. And under the Guidelines, that offense's penalty must "reflect the severity of the punishment that he faced if convicted as charged." *Williams*, 932 F.2d at 1516–17. The district court properly recognized that "underlying offense" under § 2J1.6(b)(2) refers to the most serious count of an indictment. It thus used Count 1—the count with the highest statutory maximum sentence—to apply § 2J1.6(b)(2)(B) and increased his base offense level by six. *See Magluta*, 198 F.3d at 1282; *Gardiner*, 955 F.2d at 1498.

Even so, Negrin argues that his case has an added wrinkle: though the government had not yet moved to dismiss Counts 1 and 13, Negrin contends it had no choice but to do so because the district court had accepted his guilty plea and,

7

therefore, also accepted the terms of the plea agreement.  We reject this argument because the district court had not yet accepted Negrin's plea agreement.[3]

Under the Federal Rules of Criminal Procedure, a court may accept or reject a plea agreement at the plea colloquy or defer its decision until it has reviewed the PSR.  Fed. R. Crim. P. 11(c)(3)(A); *see also* U.S.S.G. § 6B1.1(c).  Moreover, when a district court accepts a plea agreement that includes the dismissal of charges, the district court must inform the defendant that "the agreed disposition will be included in the judgment."  Fed. R. Crim. P. 11(c)(4).

Although the district court was silent at the plea hearing about accepting, rejecting, or deferring a decision on the plea agreement, two facts convince us that it deferred that decision for a later date.  First, the district court did not inform Negrin that the disposition to which he and the government agreed—a guilty plea to only Count 12 and dismissal of the others—would be included in the judgment, as Federal Rule of Criminal Procedure 11(c)(4) requires.  And second, the district court told Negrin at his plea hearing that it could not determine his sentence until it had a chance to review his PSR.  With those facts in mind, we conclude that the

---

[3] We express no opinion as to how the district court's acceptance of the plea agreement would, if at all, change our analysis.  And since we conclude that the plea agreement has no bearing on our disposition, we do not address the parties' other arguments related to it.  We also do not address Negrin's Double Jeopardy argument, because he raised that argument for the first time in his reply brief, and "[a]n appellant in a criminal case may not raise an issue for the first time in a reply appellate brief."  *United States v. Fiallo-Jacome*, 874 F.2d 1479, 1481 (11th Cir. 1989).

district court had not accepted the plea agreement and therefore all charges were still outstanding.

## CONCLUSION

Because the district court properly applied § 2J1.6(b)(2), Negrin's sentence is **AFFIRMED.**